1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11  DOROTHY GRACE MARIE MARAGLINO, )   Case No.: 1:20-cv-00826-SAB (PC)
                                   )
12          Plaintiff,             )
                                   )   SCREENING ORDER GRANTING PLAINTIFF
13      v.                         )   LEAVE TO FILE AN AMENDED COMPLAINT
                                   )
14  STATE OF CALIFORNIA, et al.,   )   [ECF No. 1]
                                   )
15          Defendants.            )
                                   )
16                                 )
                                   )
17  _____  )

18          Plaintiff Dorothy Grace Marie Maraglino is proceeding *pro se* and *in forma pauperis* in this

19  civil rights action pursuant to 42 U.S.C. § 1983.

20          Currently before the Court is Plaintiff's complaint, filed on June 15, 2020.

21                                      **I.**

22                          **SCREENING REQUIREMENT**

23          The Court is required to screen complaints brought by prisoners seeking relief against a

24  governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court

25  must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous

26  or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary

27  relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

28

1

1
2
3
4
5
6

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . .." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

7
8
9
10
11
12
13
14

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint and first amended complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Inmates sentenced to life without the possibility of parole are held in general population but denied privileges of other general population inmates of the same security level.

The State of California repeatedly enacts laws excluding relief to inmates sentenced to life without the possibility of parole (LWOP). The State of California regulates the California Department of Corrections and Rehabilitation (CDCR) who habitually enacts policies to discriminate against LWOPs.

CDCR denies LWOPs access to single or two-person cells until they reach the age of 55. CDCR denies LWOPs access to jobs that provide a living wage. CDCR forces LWOPs to program despite LWOPs being denied credits for programing.

28

2

1      The California Correctional Women's Facility (CCWF) carries out the policies of CDCR and

2   the State of California with full knowledge that they violate the Equal Protection Clause of the

3   Fourteenth Amendment.

4      CCWF has limited programs and adequate access compared to California Institution for

5   Women (CIW) which is limited only to LWOPs who are 55 years old.

6      The State of California continue to keep LWOP sentences despite rulings by the United States

7   Supreme Court stating that imprisonment beyond time a prisoner proves rehabilitation is a violation of

8   the Eighth Amendment.  LWOP sentence prevents due process for the change to prove rehabilitation

9   to return to society.

10     Plaintiff seeks an injunction to drop his life without parole sentence and for a jury to decide

11  any restitution.

12                                                      **III.**

13                                             **DISCUSSION**

14      **A.      Eleventh Amendment**

15      "The Eleventh Amendment prohibits federal courts from hearing suits brought against an

16  unconsenting state." Brooks v. Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th Cir.

17  1991) (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)). This

18  jurisdictional bar includes "suits naming state agencies and departments as defendants," and it applies

19  whether plaintiffs "seek damages or injunctive relief."  Brooks, 951 F.2d at 1053; Pennhurst State

20  School, 465 U.S. at 102. "[A]n entity with Eleventh Amendment immunity is not a "person" within

21  the meaning of § 1983." Howlett By & Through Howlett v. Rose, 496 U.S. 356, 365 (1990).  Here,

22  Plaintiff has named state agencies as Defendants, which are immune under the Eleventh Amendment.

23      However, with regard to state officials sued in their official capacity, the Eleventh Amendment

24  immunizes state officials sued in their official capacity from retrospective claims for relief (including

25  monetary damage claims), but does not immunize them from claims for prospective relief (such as

26  forward-looking injunctive relief). Kentucky v. Graham, 473 U.S. 159, 169–70 (1985); Edelman v.

27  Jordan, 415 U.S. 651 (1974); Ex Parte Young, 209 U.S. 123(1908).

28

1

**B.      Equal Protection Clause**

2        The Fourteenth Amendment's Equal Protection Clause requires only that persons who are

3   similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432,

4   439 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013);

5   Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th

6   Cir. 2008).

7        The Constitution does not require individuals who are, in fact, differently situated, to be treated

8   equally under the law. Michael M. v. Superior Court of Sonoma County, 450 U.S. 464, 469 (1981)

9   (citations omitted); Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994)

10  ("Dissimilar treatment of dissimilarly situated persons does not violate equal protection). Thus, absent

11  threshold allegations that Plaintiff is similarly situated to others who allegedly receive what he

12  perceives as more favorable treatment, he fails to state a plausible equal protection claim. See Iqbal,

13  556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere

14  conclusory statements, do not suffice.") "The Equal Protection Clause does not forbid classifications.

15  It simply keeps governmental decisionmakers from treating differently persons who are in all relevant

16  respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992); Hernandez v. Cate, 918 F. Supp. 2d 987,

17  1005-06 (C.D. Cal. 2013).  Thus, to state an Equal Protection claim, Plaintiff must allege that

18  Defendants intentionally discriminated against him based on his membership in a protected class.

19  Hartmann, 707 F.3d at 1123; Furnace, 705 F.3d at 1030; Serrano v. Francis, 345 F.3d 1071, 1082 (9th

20  Cir. 2003).

21       LWOP inmates are not a suspect class.  See Frontiero v. Richardson, 411 U.S. 677, 682 (1973)

22  (describing classifications based on sex, race, alienage, and national origin as "inherently suspect");

23  see also 2013 WL 3456964.  Moreover, Plaintiff fails to allege that LWOP inmates are similarly

24  situated to non-LWOP inmates who are also housed in the general population.  See Thornton v. City

25  of St. Helens, 425 F.3d 1158, 1168 (9th Cir. 2005) ("[D]ifferent treatment of unlike groups does not

26  support an equal protection claim."); see also Wilson v. Nesbeth, 341 Fed.Appx. 291, 293 (9th Cir.

27  2009) (upholding the dismissal of an equal protection claim because plaintiff failed to allege that EOP

28  inmates were similarly situated to other inmates).  Although Plaintiff contends that CDCR denies

1  single or two-person cells until the age of 55, and access to jobs and programming with credit,

2  Plaintiff fails to set forth further facts to plausibly show how or why she is similarly situated to non-

3  LWOP inmates in the general population.

4        Furthermore, Plaintiff has not alleged that Defendants burdened a fundamental right triggering

5  strict scrutiny because for the reasons explained below there is no constitutional right to a prison job,

6  credit earning, or single cell status.

7        "[T]he Due Process Clause of the Fourteenth Amendment 'does not create a property or liberty

8  interest in prison employment[.]" Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004) (quoting

9  Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir.1986) (per curiam); and citing Baumann v. Ariz. Dep't

10  of Corr., 754 F.2d 841, 846 (9th Cir.1985)); see also Rainer v. Chapman, 513 Fed.Appx. 674, 675 (9th

11  Cir. 2013) (holding that the district court properly dismissed the California prisoner-plaintiff's "due

12  process claims based on his removal from his work assignment and transfer from the facility where his

13  job was located because these allegations did not give rise to a constitutionally protected liberty or

14  property interest"); Barno v. Ryan, 399 Fed.Appx. 272, 273 (9th Cir. 2010) (holding that possible loss

15  of a state prison job due to a California state prisoner's classification as a sex offender did not violate

16  the prisoner's Fourteenth Amendment or Eighth Amendment rights); Gray v. Hernandez, 651 F. Supp.

17  2d 1167, 1177 (S.D. Cal. 2009) (stating that "[w]hile state statutes and prison regulations may grant

18  prisoners liberty interests sufficient to invoke due process protections, the instances in which due

19  process can be invoked are significantly limited," and holding that a California state prisoner had not

20  shown "a right to prison employment" protected under the Due Process Clause); Hunter v. Heath, 95

21  F. Supp. 2d 1140, 1147 (D. Or. 2000) ("It is uniformly well established throughout the federal circuit

22  courts that a prisoner's expectation of keeping a specific prison job, or any job, does not implicate a

23  property or liberty interest under the Fourteenth Amendment."), rev'd on other grounds, 26 Fed.Appx.

24  764, 755 (9th Cir. 2002).

25        There is no fundamental right to credit earning based on his LWOP sentence.  The Supreme

26  Court has held that the Constitution does not safeguard any right to good-time credit.  Wolff v.

27  McDonnell, 418 U.S. 539, 558 (1974). Moreover, many federal circuits have held that there is no

28  liberty interest in the potential to earn good-time credits. See Abed v. Armstrong, 209 F.3d 63, 66–67

1    (2d Cir. 2000); Antonelli v. Sheahan, 81 F.3d 1422, 1431 (7th Cir. 1996); Luken v. Scott, 71 F.3d 192,

2    193 (5th Cir. 1995); Conlogue v. Shinbaum, 949 F.2d 378, 380 (11th Cir. 1991).

3            In addition, there is no fundamental right in placement in a single or two-person prison cell.  A

4    prisoner does not have a constitutional right to be housed in a single cell. See Rhodes v. Chapman, 452

5    U.S. 337, 347-48 (1981) (holding that double-celling does not violate Eighth Amendment when it does

6    not involve conditions amounting to unnecessary and wanton pain).   An inmate has no constitutional

7    right to a particular security classification or housing. See Meachum v. Fano, 427 U.S. 215, 224–25

8    (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's

9    reclassification and transfer decisions); see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

10   Neither the Eighth nor the Fourteenth Amendment endows prisoners with a right to be housed in a

11   particular part of the prison or with a particular inmate. See Meachum v. Fano, 427 U.S. at 224–25 (no

12   liberty interest in placement in particular facility); Allen v. Purkett, 5 F.3d 1151, 1153 (8th Cir.1993)

13   (no Due Process right to be housed with compatible inmate); Bjorlin v. Hubbard, No. CIV S–09–1793

14   2010 WL 457685, *1 (E.D. Cal. Feb. 4, 2010) (same).

15           Therefore, because no suspect class or fundamental right is implicated, equal protection claims

16   like his are subject to a rational basis review.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564

17   (2000); United States v. Juvenile Male, 670 F.3d 999, 1009 (9th Cir. 2012); Nelson v. City of Irvine,

18   143 F.3d 1196, 1205 (9th Cir. 1998) ("Unless a classification trammels fundamental personal rights or

19   implicates a suspect classification, to meet constitutional challenge the law in question needs only

20   some rational relation to a legitimate state interest."). In the prison context, the right to equal

21   protection is viewed through a standard of reasonableness; that is, whether the actions of prison

22   officials are "reasonably related to legitimate penological interests." Walker v. Gomez, 370 F.3d at

23   974 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).  Plaintiff has plead insufficient facts from which

24   the Court can conclude that CDCR's determinations lack a rational or penological interest.

25   Accordingly, Plaintiff has failed to state an equal protection claim.  See, e.g., Hoban v. California

26   Dep't of Corr., No. 1:09-CV-1752MJSPC, 2010 WL 5136026, at *3 (E.D. Cal. Dec. 10, 2010) (sua

27   sponte dismissing equal protection claims alleging "Class III prisoners held in other parts of the prison

28

1    [were] afforded access to programming and allowed to possess personal fans, televisions, and other

2    electronic devices, while those housed in the Gymnasium [were] not.").

3            C.       **Challenge to Life Without Possibility of Parole Sentence**

4            Plaintiff's challenge and request that her sentence of life without the possibility of parole is not

5    cognizable by way of section 1983 complaint.

6            "Federal law opens two main avenues to relief on complaints related to imprisonment: a

7    petition for writ of habeas corpus, 28 U.S.C. § 2254, and a complaint under … 42 U.S.C. § 1983."

8    Muhammad v. Close, 540 U.S. 749, 750 (2004) (per curiam).  "Challenges to the validity of any

9    confinement or to particulars affecting its duration are the province of habeas corpus; requests for

10   relief turning on circumstances of confinement may be presented in a § 1983 action."  Id. (internal

11   citation omitted).   Federal courts lack habeas jurisdiction over claims by state prisoners that are not

12   within "the core of habeas corpus."  Nettles v. Grounds, 830 F.3d 922, 934 (9th Cir. 2016) (en banc).

13   A detainee's claims are within the core of habeas corpus if they challenge the fact or duration of his

14   conviction or sentence.  Id. at 934.

15           Often referred to as the favorable termination rule or the Heck bar, habeas corpus jurisdiction

16   applies whenever confined individuals "seek to invalidate the duration of their confinement—either

17   directly through an injunction compelling speedier release or indirectly through a judicial

18   determination that necessarily implies the unlawfulness of the State's custody."  Wilkinson v. Dotson,

19   544 U.S. 74, 81 (2005); Heck v. Humphrey, 512 U.S. 447 (1994).  Accordingly, an action is barred

20   (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the

21   target of the suit if success in that action would necessarily demonstrate the invalidity of confinement

22   or its duration.  Wilkinson, 544 U.S. at 81-82.

23           Accordingly, Plaintiff may not challenge his life sentence by way of section 1983, as such

24   claim must be brought solely by way of a habeas corpus petition.

25                                              **IV.**

26                              **CONCLUSION AND ORDER**

27           For the reasons discussed, Plaintiff fails to state a cognizable claim for relief and shall be granted

28   leave to file an amended complaint to cure the deficiencies identified in this order, if he believes he can

                                                7

1   do so in good faith.  See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

2        Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each

3   named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at

4   678-79.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief

5   above the speculative level . . . ."  Twombly, 550 U.S. at 555 (citations omitted).  Further, Plaintiff may

6   not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George,

7   507 F.3d at 607 (no "buckshot" complaints).

8        Finally, Plaintiff is advised that an amended complaint supersedes the original complaint.  Lacey

9   v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012).  Therefore, Plaintiff's amended complaint must

10  be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.

11       Based on the foregoing, it is HEREBY ORDERED that:

12       1.    The Clerk's Office shall send Plaintiff a civil rights complaint form;

13       2.    Within thirty (30) days from the date of service of this order, Plaintiff shall file an

14             amended complaint;

15       3.    Plaintiff's amended complaint shall not exceed twenty-five (25) pages in length; and

16       4.    If Plaintiff fails to file an amended complaint in compliance with this order, the Court

17             will recommend to a district judge that this action be dismissed consistent with the

18             reasons stated in this order.

19

20  IT IS SO ORDERED.

21  Dated:   **June 30, 2020**

22                                          UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

8