1
2
3
4
5
6
7
8  **UNITED STATES DISTRICT COURT**
9  **EASTERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11  DOROTHY GRACE MARIE MARAGLINO, ) | Case No.: 1:20-cv-00826-SAB (PC) |
| 12      Plaintiff, ) | **ORDER DIRECTING CLERK OF COURT TO** |
| 13  v. ) | **RANDOMLY ASSIGN A DISTRICT JUDGE TO** |
| | **THIS ACTION** |
| 14  STATE OF CALIFORNIA, et al., ) | **FINDINGS AND RECOMMENDATION** |
| 15      Defendants. ) | **RECOMMENDING DISMISSAL OF ACTION** |
| | **FOR FAILURE TO STATE A COGNIZABLE** |
| 16 ) | **CLAIM FOR RELIEF** |
| 17 _____ ) | (ECF No. 12) |

18      Plaintiff Dorothy Grace Marie Maraglino is proceeding *pro se* and *in forma pauperis* in this

19  civil rights action pursuant to 42 U.S.C. § 1983.

20      Currently before the Court is Plaintiff's first amended complaint, filed September 28, 2020.

21  (ECF No. 12.)

22  **I.**

23  **SCREENING REQUIREMENT**

24      The Court is required to screen complaints brought by prisoners seeking relief against a

25  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court

26  must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous

27  or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary

28  relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . .."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint and first amended complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff was sentenced to Life Without the Possibility of Parole ("LWOP") under the felony murder rule.  It was alleged that Plaintiff's participation was in the form of conspiracy without direct participation in the murder.

On December 2, 2015, Plaintiff arrived at Central California Women's Facility (CCWF).  Plaintiff was assessed a 48 point custody level due to the LWOP sentence.  Plaintiff was placed on "closed custody" status due to her LWOP sentence.  Plaintiff was denied employment on the facility yard, prison industry authority, and joint venture due to her LWOP sentence.  Plaintiff was also denied transfer to the California Institution for Women (CIW).  Plaintiff has been denied participation in programming due to her LWOP sentence.

In July 2020, Plaintiff learned that LWOPs had parole eligibility until 1994.  LWOP parole law was repealed in 1994 without legislative action.

On July 30, 2020, Plaintiff received a road to rehabilitation plan published by CDCR.  The milestones can be achieved to rehabilitate, but LWOPs are now allowed to go to parole board hearings for parole consideration.

The first week of August 2020, Plaintiff discovered an article from "Parole Matters" with numerous court decisions that state it is unconstitutional to hold a rehabilitated person in prison.

While in protective custody following being raped, Plaintiff witnessed the prison's death row.  The quality of life for prisoners on death row is better than Plaintiff's experience in general population.  The crimes eligible for LWOP are also eligible for death row.  Plaintiff's request during trial for a death row sentence was denied.

In May 2002, Plaintiff requested prison rehouse her on death row.  On June 9, 2020, Warden M. Pallares wrote Plaintiff a letter denying her request to be housed on death row.

On August 26, 2020, CDCR sent a letter to Plaintiff regarding updates to Penal Code section 1170(d) stating it does not apply to LWOPs.

In August 2020, emergency covid release information was given to Plaintiff with notation that relief is not extended to LWOPs.

LWOP goes beyond mere classification and issued as a tool for discrimination.  Discrimination against gender has moved beyond how a person looks physically.  It's possible for an African American who appears White to be discriminated against by those who discover his/her ethnic background.

LWOP may not be physical identifiable but it is a "describing classification" that causes "inherently suspect" attitudes among prison staff, CDCR administration and the law makers of California.  LWOPs are an arbitrary classification based on prejudices.

LWOP conjures up assumptions of a violently dangerous person who has taken another person's life.  A significant percentage of LWOPs are non-killers.  Actual killers who killed out of rage and not accidentally during a felony crime are sentenced to parole eligibility dates.  They are called "lifers."   Lifers qualify to be housed at CIW in two person cells.  LWOPs are not.  Lifers may

3

work for prison industry authority and joint venture, but LWOPs cannot.  Lifers may earn time off their sentences while LWOPs cannot.  Lifers qualify for 25 years and under as juvenile, while LWOPs are 18 years and under.

When an LWOP is a non-killer level 2 (lowest an LWOP can earn) and has been discipline free for years there is no reason other than discrimination to force them to work with no time relief, limited employment opportunities, limited program opportunities, and limited housing opportunities.

### III.

### DISCUSSION

**A.    Signature Under Penalty of Perjury**

A review of Plaintiff's amended complaint reveals that Plaintiff did not sign the complaint under penalty of perjury.  All filings submitted to the Court must bear the signature of the filing party. Local Rule 131; Fed. R. Civ. P. 11(a).  In such instance, the Court would generally strike the complaint from the record and direct that an amended complaint with an original signature under penalty of perjury be filed; however, in this case such amendment would be futile because for the reasons explained below Plaintiff has not and cannot state a cognizable 1983 claim.

**B.    Equal Protection Claim**

The Fourteenth Amendment's Equal Protection Clause requires only that persons who are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).

The Constitution does not require individuals who are, in fact, differently situated, to be treated equally under the law. Michael M. v. Superior Court of Sonoma County, 450 U.S. 464, 469 (1981) (citations omitted); Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994) ("Dissimilar treatment of dissimilarly situated persons does not violate equal protection). Thus, absent threshold allegations that Plaintiff is similarly situated to others who allegedly receive what he perceives as more favorable treatment, he fails to state a plausible equal protection claim. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.") "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992); Hernandez v. Cate, 918 F. Supp. 2d 987, 1005-06 (C.D. Cal. 2013).  Thus, to state an Equal Protection claim, Plaintiff must allege that Defendants intentionally discriminated against him based on her membership in a protected class. Hartmann, 707 F.3d at 1123; Furnace, 705 F.3d at 1030; Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003).

LWOP inmates are not a suspect class.  See Frontiero v. Richardson, 411 U.S. 677, 682 (1973) (describing classifications based on sex, race, alienage, and national origin as "inherently suspect"); see also 2013 WL 3456964.  Moreover, Plaintiff fails to allege that LWOP inmates are similarly situated to non-LWOP inmates who are also housed in the general population.  See Thornton v. City of St. Helens, 425 F.3d 1158, 1168 (9th Cir. 2005) ("[D]ifferent treatment of unlike groups does not support an equal protection claim."); see also Wilson v. Nesbeth, 341 Fed.Appx. 291, 293 (9th Cir. 2009) (upholding the dismissal of an equal protection claim because plaintiff failed to allege that EOP inmates were similarly situated to other inmates).  Although Plaintiff contends that CDCR denies access to jobs and programming with credit, Plaintiff fails to set forth further facts to plausibly show how or why she is similarly situated to non-LWOP inmates.  Further, Plaintiff as an LWOP prisoner, is not similarly situated to prisoners who are eligible for parole hearings.  See People v. Jacobs, 157 Cal. App. 3d 797, 803, 204 Cal.Rptr. 234 (1984) ("Persons convicted of *different* crimes are not similarly situated for equal protection purposes."); Thomas v. Arnold, No. 3:16-cv-02986-WQH-NLS, 2018 WL 279975, at *6 (S.D. Cal. Jan. 3, 2018) (holding that petitioner, who was convicted of first degree murder with special circumstances and sentenced to LWOP, was not similarly situated to other offenders convicted of different crimes that resulted in the opportunity for parole as part of their sentence), report and recommendation adopted by  2018 WL 1426835 (S.D. Cal. Mar. 22, 2018); Allen v. Kernan, No. CV 16-4803 AB, 2016 WL 6652718, at *4-5 (C.D. Cal. Oct. 5, 2016) (finding that petitioner, who was convicted of two counts of first-degree murder and sentenced to an indeterminate sentence of LWOP, failed to show that he was similarly situated with others who were convicted of less serious crimes and are eligible for parole), report and recommendation adopted by

2016 WL 6652705 (C.D. Cal. Nov. 9, 2016); McKinley v. Madden, No. EDCV 17-01023-VBF (JDE), 2018 U.S. Dist. LEXIS 33932, at *9-10, (C.D. Cal. Jan. 19, 2018) (concluding that petitioner, who was convicted of first degree murder with special circumstances, two counts of attempted second degree robbery, four counts of second degree robbery, misdemeanor battery, and assault, and sentenced to LWOP, had not shown that he was similarly situated to 18-22-year-olds convicted of less serious crimes with an opportunity for parole), report and recommendation adopted by 2018 U.S. Dist. LEXIS 33831, (C.D. Cal. Feb. 28, 2018). Thus, Plaintiff fails to identify a similarly situated class for purposes of her equal protection.

Furthermore, Plaintiff has not alleged that Defendants burdened a fundamental right triggering strict scrutiny because for the reasons explained below there is no constitutional right to a prison job, credit earning, or single cell status.

"[T]he Due Process Clause of the Fourteenth Amendment 'does not create a property or liberty interest in prison employment[.]" Walker v. Gomez, 370 F.3d 969, 973 (9th Cir. 2004) (quoting Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir.1986) (per curiam); and citing Baumann v. Ariz. Dep't of Corr., 754 F.2d 841, 846 (9th Cir.1985)); see also Rainer v. Chapman, 513 Fed.Appx. 674, 675 (9th Cir. 2013) (holding that the district court properly dismissed the California prisoner-plaintiff's "due process claims based on his removal from his work assignment and transfer from the facility where his job was located because these allegations did not give rise to a constitutionally protected liberty or property interest"); Barno v. Ryan, 399 Fed.Appx. 272, 273 (9th Cir. 2010) (holding that possible loss of a state prison job due to a California state prisoner's classification as a sex offender did not violate the prisoner's Fourteenth Amendment or Eighth Amendment rights); Gray v. Hernandez, 651 F. Supp. 2d 1167, 1177 (S.D. Cal. 2009) (stating that "[w]hile state statutes and prison regulations may grant prisoners liberty interests sufficient to invoke due process protections, the instances in which due process can be invoked are significantly limited," and holding that a California state prisoner had not shown "a right to prison employment" protected under the Due Process Clause); Hunter v. Heath, 95 F. Supp. 2d 1140, 1147 (D. Or. 2000) ("It is uniformly well established throughout the federal circuit courts that a prisoner's expectation of keeping a specific prison job, or any job, does not implicate a

property or liberty interest under the Fourteenth Amendment."), rev'd on other grounds, 26 Fed.Appx. 764, 755 (9th Cir. 2002).

There is no fundamental right to credit earning based on her LWOP sentence.  The Supreme Court has held that the Constitution does not safeguard any right to good-time credit.  Wolff v. McDonnell, 418 U.S. 539, 558 (1974). Moreover, many federal circuits have held that there is no liberty interest in the potential to earn good-time credits. See Abed v. Armstrong, 209 F.3d 63, 66–67 (2d Cir. 2000); Antonelli v. Sheahan, 81 F.3d 1422, 1431 (7th Cir. 1996); Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995); Conlogue v. Shinbaum, 949 F.2d 378, 380 (11th Cir. 1991).

In addition, there is no fundamental right in placement in a single or two-person prison cell.  A prisoner does not have a constitutional right to be housed in a single cell. See Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981) (holding that double-celling does not violate Eighth Amendment when it does not involve conditions amounting to unnecessary and wanton pain).   An inmate has no constitutional right to a particular security classification or housing. See Meachum v. Fano, 427 U.S. 215, 224–25 (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's reclassification and transfer decisions); see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007). Neither the Eighth nor the Fourteenth Amendment endows prisoners with a right to be housed in a particular part of the prison or with a particular inmate. See Meachum v. Fano, 427 U.S. at 224–25 (no liberty interest in placement in particular facility); Allen v. Purkett, 5 F.3d 1151, 1153 (8th Cir.1993) (no Due Process right to be housed with compatible inmate); Bjorlin v. Hubbard, No. CIV S–09–1793 2010 WL 457685, *1 (E.D. Cal. Feb. 4, 2010) (same).

Moreover, there is no fundamental right to receive parole consideration. Mayner v. Callahan, 873 F.2d 1300, 1302 (9th Cir. 1989) ("[P]arole consideration is not a fundamental right requiring a higher level of scrutiny."); see also United States v. Whitlock, 639 F.3d 935, 941 (9th Cir. 2011) ("There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to prisoners.") (quoting Swarthout v. Cooke, 562 U.S. 216, 220 (2011) (per curiam) ).

Because no suspect class or fundamental right is implicated, equal protection claims like this are subject to a rational basis review.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000);

1    United States v. Juvenile Male, 670 F.3d 999, 1009 (9th Cir. 2012); Nelson v. City of Irvine, 143 F.3d

2    1196, 1205 (9th Cir. 1998) ("Unless a classification trammels fundamental personal rights or

3    implicates a suspect classification, to meet constitutional challenge the law in question needs only

4    some rational relation to a legitimate state interest."). In the prison context, the right to equal

5    protection is viewed through a standard of reasonableness; that is, whether the actions of prison

6    officials are "reasonably related to legitimate penological interests." Walker v. Gomez, 370 F.3d at

7    974 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).  Plaintiff has plead insufficient facts from which

8    the Court can conclude that CDCR's determinations lack a rational or penological interest.

9    Accordingly, Plaintiff has failed to state an equal protection claim.  See, e.g., Hoban v. California

10   Dep't of Corr., No. 1:09-CV-1752MJSPC, 2010 WL 5136026, at *3 (E.D. Cal. Dec. 10, 2010) (sua

11   sponte dismissing equal protection claims alleging "Class III prisoners held in other parts of the prison

12   [were] afforded access to programming and allowed to possess personal fans, televisions, and other

13   electronic devices, while those housed in the Gymnasium [were] not.").

14          Promoting public safety is an important government interest. See Fyock v. City of Sunnyvale,

15   779 F.3d 991, 1000 (9th Cir. 2015).  In California, the parole system is both intended and applied to

16   promote the legitimate state interest of public safety.  Webber v. Crabtree, 158 F.3d 460, ___ (9th Cir.

17   1998); McQuillon v. Duncan, 306 F.3d 895, 910 (9th Cir. 2002) ("Parole suitability determinations are

18   made based on the gravity of the underlying offense and past convicted offenses and considerations of

19   the public safety.") (quotations omitted). "In fashioning sentence reform for young adult offenders in

20   the last several years ... the California Legislature has chosen to except from the benefits of that reform

21   those offenders whose LWOP sentences by their nature reflect the commission of particularly severe

22   crimes." Adams v. Frauenheim, No. 17-cv-01289-EMC, 2018 WL 3046939, at *6 (N.D. Cal. June 14,

23   2018).  California "has a legitimate interest in sentencing persons convicted of murder more severely

24   than those convicted of other crimes." Blazer v. Scribner, No. CV 06-5329-ODW (PLA), 2009 WL

25   1740829, at *16 (C.D. Cal. June 17, 2009) (citation omitted).

26          Plaintiff has not shown that imposing an LWOP sentence is not rationally related to protecting

27   the people of California from particularly dangerous criminals. "It is the prerogative of the Legislature

28   ... to recognize degrees of culpability and penalize accordingly." People v. Jacobs, 157 Cal. App. 3d

797, 804 (Cal. Ct. App. 1984); see also Oyler v. Boles, 368 U.S. 448, 451 (1962) ("Petitioners recognize that the constitutionality of the practice of inflicting severer criminal penalties upon habitual offenders is no longer open to serious challenge."); Jacobs, 157 Cal. App. 3d at 803-04 (equal protection principles do not require people convicted of different crimes to receive the same sentence); People v. DeSimone, 62 Cal. App. 4th 693, 701-02 (Cal. Ct. App. 1998) (as with multiple murders, "the Legislature could reasonably determine that a particular sexual offense is more heinous because it is one of multiple acts against more than one victim").  Because there is a rational basis for sentencing individuals convicted of certain offenses to life without the possibility of parole, Plaintiff's equal protection fails.  Indeed, the crux of Plaintiff's claim revolves around her disagreement with the LWOP sentence and its implications.  However, as Plaintiff acknowledges, any challenge to her sentence must be raised by way of habeas corpus petition.  Therefore, Plaintiff's complaint should be dismissed.

## C.    Eighth Amendment Cruel and Unusual Punishment Claim

To the extent Plaintiff contends that her LWOP sentence and lack of privileges constitute cruel and unusual punishment, Plaintiff's claim fails.

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they deny humane conditions of confinement with deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 832 (1994). To state a conditions of confinement claim, an inmate must show objective and subjective components. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002). The objective component requires an "objectively insufficiently humane condition violative of the Eighth Amendment" which poses a substantial risk of serious harm. Osolinski v. Kane, 92 F.3d 934, 938 (9th Cir. 1996).  The subjective component requires prison officials acted with the culpable mental state, which is "deliberate indifference" to the substantial risk of serious harm. Farmer, 511 U.S. at 837-38; Estelle v. Gamble, 429 U.S. 97, 104 (1976). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837-38.

While " 'deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation,' " the routine discomforts and deprivations inherent in prison settings do not give rise to Eighth Amendment violations. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Under the Eighth Amendment, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Id. (citing Farmer, 511 U.S. at 832; Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)).

Plaintiff does not state an Eighth Amendment cruel and unusual punishment claim, because she has not alleged that prison officials deprived her of humane conditions of confinement. Accordingly, Plaintiff fails to state a cognizable Eighth Amendment claim.

### D.   Further leave to amend

A court's discretion in deciding whether to allow further amendments to a complaint is "particularly broad" when the court has already granted plaintiff leave to amend. See Chodos v. W. Publ'g Co., 292 F.3d 992, 1003 (9th Cir. 2002); see also Rich v. Shrader, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed.") (citation and brackets omitted). The exercise of the court's discretion to deny further leave to amend is especially warranted when the amended complaint merely repeats the deficiencies of the original complaint. See Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 674 (9th Cir. 1981) (affirming dismissal with prejudice of first amended complaint that was "as verbose, confusing and conclusory as the initial complaint"). Where further amendment would be futile, dismissal without leave to amend is appropriate. Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1129 (9th Cir. 2013); Serra v. Lappin, 600 F.3d 1191, 1200 (9th Cir. 2010).

Plaintiff was informed previously of the appropriate standards and allowed to cure the deficiencies by filing an amended complaint. Despite having been given an opportunity to cure these deficiencies, Plaintiff has failed to do so in the first amended complaint. Because any further attempt to amend would yield the same result, the Court finds amendment would be futile. Accordingly, the

Court recommends that Plaintiff's claims be dismissed without further leave to amend. See Brown v. Fitzpatrick, 667 Fed.Appx. 267, 267 (9th Cir. 2016) ("The district court did not abuse its discretion in dismissing [the *pro se* plaintiff's] amended complaint without leave to amend after providing [the plaintiff] with one opportunity to amend."); Fosselman v. Hidalgo, 599 Fed.Appx. 310, 310 (9th Cir. 2015) ("The district court did not abuse its discretion in denying [the plaintiff] further leave to amend after his first amended complaint failed to cure the deficiencies.").

### IV.

### ORDER AND RECOMMENDATION

For the reasons discussed, Plaintiff fails to state a cognizable claim for relief and further amendment is not warranted.

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court randomly assign a Fresno District Judge to this action.

Further, it is HEREBY RECOMMENDED that this action be dismissed for failure to state a cognizable claim for relief

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with this Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 19, 2020**

UNITED STATES MAGISTRATE JUDGE

11